Court File No.

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| JOSEPH J. WALTERS | |
| Plaintiff, | COMPLAINT |
| vs. | |
| MINNESOTA DEPARTMENT OF CORRECTIONS | JURY TRIAL DEMANDED |
| Defendant | |

---

Plaintiff, by his attorneys Franz Hultgren Evenson, P.A., brings this action for damages and other legal and equitable relief from Defendant's violations of law. Plaintiff states the following as his claim against Defendant.

## JURISDICTION AND VENUE

1.  This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., as amended by the Civil Rights Act of 1991. Jurisdiction is conferred upon this Court by 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1331.

2.  The unlawful practices described hereinafter have been committed in the District of Minnesota. Defendant Minnesota Department of Corrections is located within and operates correctional facilities in the state of Minnesota. The District of Minnesota is therefore the appropriate venue for this matter pursuant to 28 U.S.C. § 1391.

## PARTIES

3.  Plaintiff Joseph J. Walters ("Plaintiff") is a Minnesota resident.

4. Defendant Minnesota Department of Corrections ("Defendant") is an agency of the State of Minnesota with its office located at 1450 Energy Park Drive, Suite 200, St. Paul, Minnesota 55108. Defendant operates the Minnesota Correctional Facility – St. Cloud located at 2305 Minnesota Blvd, St. Cloud, MN 56304 ("MCF-St. Cloud").

## FACTS

5. Plaintiff is a practicing Catholic and has been a Catholic his entire life.

6. According to Defendant's website:

> MCF-St. Cloud was opened in 1889. Originally known as the Minnesota State Reformatory for Men, it was designed to rehabilitate first time "offenders" between the ages of 16 - 30, through industrial work-programming activity. The site was chosen to utilize the quarrying of granite for the construction of the facility and it was largely built with inmate labor. While the facility no longer has the extensive industrial programming it once had as a Reformatory, it has the distinction of having the only Masonry and Barber programs in the Minnesota DOC. MCF-St. Cloud also has the distinction of having the first female warden (the late Patt Adair) appointed to a male adult facility.
>
> The most unique information for the facility is its iconic granite wall. Completed in 1922, the wall is considered the second largest continuous wall made by incarcerated individuals. The first is the Great Wall of China.
>
> In 1996, the facility became the admitting facility for all adult males in the Minnesota DOC. It continues this function today. The vast majority of men are assessed and classified and transferred to other DOC facilities. It also has two chemical dependency programs and offers adult basic and general education programming.

https://mn.gov/doc/facilities/st-cloud/

7. Plaintiff began working for Defendant in October of 2005 and began working at MCF – St. Cloud in October of 2006 as a corrections officer and is still currently employed by Defendant at MCF – St. Cloud.

8. Plaintiff is a member of the American Federation of State, County and Municipal Employees, Minnesota Council 5, Unit 208, which is a trade union that acts as the exclusive bargaining representative of the corrections officers at MCF-St. Cloud (the "Union").

9. Currently the employment relationship between Plaintiff and Defendant is subject to an Agreement between the Union and the State of Minnesota dated September 10, 2021 and effective from July 1, 2021 through June 30, 2023 (the "Agreement"). See Exhibit A attached hereto and incorporated herein.

10. Under Article 5 of the Agreement, "shifts, days, and hours of all employees shall be posted at least fourteen (14) calendar days in advance of their effective day." Furthermore, with some exceptions, "[a]ll schedule changes shall require . . . a fourteen (14) day notice."

11. Employees under the Agreement may exchange shifts subject to the following requirements:

> Employees who are qualified and capable may mutually agree to exchange days, shifts and/or hours of work with the advance approval of the watch commander(s) or the employee's scheduling supervisor, which shall not be unreasonably denied and provided such change does not result in the payment of overtime. A voluntary change of shifts results in the payment of overtime only when it places the employee's hours of work in excess of those permitted by the Fair Labor Standards Act (FLSA). The watch commander('s) or the employee's scheduling supervisor('s) signature of approval shall be obtained prior to the occurrence of the exchange. Such exchanges shall be subject to the following conditions:
>
> 1. All requests for exchanges must be reduced to writing on a Department of Corrections form and must state the exact days, shifts and/or hours of both employees that are involved in the shift exchange request(s).
>
> 2. All shift exchange requests shall be completed within twelve (12) weeks, unless approved in advance by the Appointing Authority. Each officer may participate in up to a maximum of thirty-three (33) shift exchanges per fiscal year. Shift exchanges are also limited to ten (10) per calendar month.

3. No employee may agree to a shift exchange that would result in the employee working more than eighteen (18) consecutive hours.

4. Employees failing to work on the payback day or any part thereof due to illness of self or others will be treated in accordance with Article 9, Sick Leave.

5. Failure to work the payback day or any part thereof shall constitute just cause for discipline and shall be subject to the provisions of Article 16, Discipline and Discharge.

12. Under Article 7, Section 2, of the Agreement, Christmas Day is the only religious holiday considered a holiday.

13. The Agreement also provides for a "Floating Holiday":

> All employees except intermittent, emergency, and temporary employees shall also receive one (1) floating holiday each fiscal year of this Agreement. However, intermittent employees shall receive one (1) floating holiday each fiscal year of this Agreement if they complete ninety-one (91) working days in that fiscal year. Unless waived by the supervisor, the employee must request the floating holiday at least fourteen (14) calendar days in advance.
>
> The Appointing Authority may limit the number of employees that may be absent on any given day subject to the operational needs of the Appointing Authority.
>
> Any conflicts for requested holidays shall be resolved on the basis of State Seniority within the employee's work unit. The Appointing Authority shall make a reasonable effort to approve the requested holiday. Floating holidays may not be accumulated. An employee who has not requested the floating holiday by March 1 of each fiscal year or by thirty (30) calendar days prior to the end of an employee's season shall be scheduled to take a floating holiday on a day chosen by the Appointing Authority or be paid for the floating holiday in cash at the option of the Appointing Authority. See Article 8, Vacation, Section 3, A.

14. Pursuant Article 7, Section 7, Plaintiff is entitled to take a day off to observe religious holidays if the religious holidays are not observed as a holiday under Article 7, Section 2. To take a day off for religious holidays Plaintiff is required to notify his supervisor in writing at least 21 days prior to the religious holiday.

4

15. Christmas Eve precedes Christmas Day and for Catholics is traditionally observed as a holiday. According to the Catholic Culture website:

> Christmas day should start with Midnight Mass or at least an early Mass and Communion. This is the official coming of the Christ Child for which we have been waiting all during the Advent period. Show the children the Infant Jesus in the Nativity scene in church and remind them that, although the infant in the crib is only a statue, Jesus is really present up on the altar (and in their hearts).

See https://www.catholicculture.org/culture/liturgicalyear/activities/view.cfm?id=350.

16. Easter is the most important holiday in the Roman Catholic faith. Easter is preceded by Lent which is "the period of 40 days (not counting Sundays) before Easter, which traditionally is observed by acts of penance and fasting." See https://www.britannica.com/topic/Easter-holiday/Liturgical-observances.

17. "Easter is immediately preceded by Holy Week, which includes Maundy Thursday, the commemoration of Jesus' Last Supper with his disciples; Good Friday, the day of his Crucifixion; and Holy Saturday, the transition between Crucifixion and Resurrection." See Id.

18. In terms of timing, Easter "is always observed on a Sunday between March 22 and April 25" of each year. See https://www.almanac.com/content/when-is-easter.

19. Ash Wednesday is a religious holiday observed by Roman Catholics. "Ash Wednesday comes from the ancient Jewish tradition of penance and fasting." See https://www.catholic.org/lent/ashwed.php. "The practice includes the wearing of ashes on the head." See Id. "The ashes symbolize the dust from which God made us." See Id. "As the priest applies the ashes to a person's forehead, he speaks the words: 'Remember that you are dust, and to dust you shall return.'" See Id. Ash Wednesday is observed 46 days before Easter Sunday. See Id.

20. Good Friday is a Roman Catholic holiday that is "the Friday before Easter, the day on which Christians annually observe the commemoration of the Crucifixion of Jesus Christ. From

the early days of Christianity, Good Friday was observed as a day of sorrow, penance, and fasting." See https://www.britannica.com/topic/Good-Friday

21. All Souls' Day is a Roman Catholic holiday that is "a day for commemoration of all the faithful departed, those baptized Christians who are believed to be in purgatory because they died with the guilt of lesser sins on their souls." See https://www.britannica.com/topic/All-Souls-Day-Christianity. "It is observed on November 2." See Id. "Roman Catholic doctrine holds that the prayers of the faithful on earth will help cleanse these souls in order to fit them for the vision of God in heaven, and the day is dedicated to prayer and remembrance." See Id. "Requiem masses are commonly held, and many people visit and sometimes decorate the graves of loved ones." See Id.

22. On February 16, 2021 Plaintiff submitted a Request for Leave to his supervisor to observe Ash Wednesday. See Ex. B attached hereto and incorporated herein. Furthermore, all positions necessary for the safety of the MCF-St. Cloud facility were filled by adequate staffing. See Ex. C attached hereto and incorporated herein. Therefore there would be no undue hardship on Defendant to have accommodated Plaintiff's Request for Leave. However, the Request for Leave was denied. See Ex. B.

23. On March 12, 2021 Plaintiff submitted a Request for Leave to his supervisor to observe Easter. See Ex. D attached hereto and incorporated herein. This was more than 21 days before Easter and therefore in compliance with the Agreement. Furthermore, all positions necessary for the safety of the MCF-St. Cloud facility were filled by adequate staffing and there were in fact 7 staff in the reserve pool. See Id. Therefore, there would be no undue hardship on Defendant to have accommodated Plaintiff's Request for Leave. However, the Request for Leave was denied. See Id.

24. On March 17, 2021 Plaintiff submitted a Request for Leave to his supervisor to observe Good Friday. See Ex. E attached hereto and incorporated herein. This was more than 14 days before Easter and therefore in compliance with the Agreement as Plaintiff requested to use his Floating Holiday. Furthermore, all positions necessary for the safety of the MCF-St. Cloud facility were filled by adequate staffing and included an additional 7 staff in the reserve pool. See Ex. D. Therefore there would be no undue hardship on Defendant to have accommodated Plaintiff's Request for Leave. However, the Request for Leave was denied. See Id.

25. On July 9, 2021 Plaintiff submitted a Request for Leave to his supervisor to observe Christmas Eve. See Ex. F attached hereto and incorporated herein. This was more than 21 days before Christmas Eve and therefore in compliance with the Agreement. Furthermore, all positions necessary for the safety of the MCF-St. Cloud facility were filled by adequate staffing because there were 8 extra staff. See Ex. G attached hereto and incorporated herein. Therefore there would be no undue hardship on Defendant to have accommodated Plaintiff's Request for Leave. However, the Request for Leave was denied. See Ex. F.

26. On October 8, 2021 Plaintiff submitted a Request for Leave to his supervisor to observe All Souls' Day. See Ex. H attached hereto and incorporated herein. This was more than 21 days before All Souls' Day and therefore in compliance with the Agreement. Furthermore, all positions necessary for the safety of the MCF-St. Cloud facility were filled by adequate staffing because there were 5 extra staff on duty. Therefore there would be no undue hardship on Defendant to have accommodated Plaintiff's Request for Leave. However, the Request for Leave was denied. See Id.

## CAUSE OF ACTION

## COUNT I

**Religious Discrimination in Violation of 42 U.S.C § 2000e, <u>et seq.</u>**

27. By reference hereto, Plaintiff incorporates paragraphs 1 - 28 of this Complaint.

28. Title VII provides that it is unlawful for an employer "to discriminate against any individual with respect to . . . compensation, terms, conditions or privileges of employment because of such individual's . . . religion," which is defined as "all aspects of religious observance and practice as well as belief." 42 U.S.C. §§ 2000e- 2(a)(1), 2000e-(j).

29. During all relevant times herein, Plaintiff and Defendant were "employee" and "employer" respectively, for the purpose of the definitions set forth in 42 U.S.C. § 2000e.

*30*. By its conduct, Defendants discriminated against Plaintiff on the basis of his religion and failed to accommodate the requirements of his religion in violation of 42 U.S.C. § 2000e, *et seq*.

31. As a direct result of Defendant's conduct, Plaintiff has suffered the loss of past and future income, mental anguish, emotional distress, loss of benefits, and other damages in an amount in excess of $75,000.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that the Court enter judgment in her favor, and against Defendant, as follows:

A. For compensatory damages including loss of past and future income, mental anguish, emotional distress and other related damages;

B. For all damages permitted for violations of 42 U.S.C. § 2000e, et seq.;

C. For all damages permitted for violations of Minn. Stat. § 363A.01, et seq.;

D. For costs, disbursements, and attorney's fees; and

E. For such other and further relief as the court deems just and equitable.

                                            FRANZ HULTGREN EVENSON, P.A.

Dated: May 27, 2022                       /s/ *John A. Abress*
                                                John A. Abress; Atty. ID #0395129
                                                Attorney for Plaintiff
                                                Franz Hultgren Evenson, P.A.
                                                1011 North Second Street, PO Box 307
                                                St. Cloud, MN 56302
                                                Tel: (320) 253-7130
                                                Email: jabress@fhelawyers.com