UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| Joseph J. Walters, | Court File No. 22-cv-01432 (ECT/LIB) |
| Plaintiff, | |
| vs. | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS** |
| Minnesota Department of Corrections, | |
| Defendant. | |

**INTRODUCTION**

Defendant Minnesota Department of Corrections ("DOC") moves to dismiss the single count filed against it by Plaintiff Joseph J. Walters. Plaintiff's claim arises out of his employment as a corrections officer with DOC. Specifically, Plaintiff alleges that he was discriminated against based on his Catholic religion between February and November 2021 when his leave requests to observe certain religious holidays were denied.

Plaintiff fails to plead a viable claim for religious discrimination, however, because he does not allege any adverse employment action arising from the alleged denial of his leave requests. Furthermore, the facts as alleged on the face of the complaint and exhibits attached thereto establish that the DOC has provided Plaintiff with a reasonable accommodation for his religious beliefs through its existing leave policies and collective bargaining agreement. DOC therefore respectfully requests that the Court dismiss the claims against him with prejudice.

## STATEMENT OF FACTS

This action arises out of Plaintiff's employment with DOC. The DOC is the state agency responsible for the management of all state correctional facilities and for the custody and care of all persons committed to the state correctional system. Minn. Stat. § 241.01 (establish the DOC as a state agency). Plaintiff alleges he is a practicing Catholic. (Compl. ¶ 5.) Plaintiff has worked as a corrections officer for DOC since October of 2005. (*Id.*) Specifically, Plaintiff has worked as a corrections officer at MCF – St. Cloud since October of 2006. (*Id.* ¶ 7.) The employment relationship between Plaintiff and DOC is subject to the terms of a collective bargaining agreement ("CBA") between the American Federation of State, County and Municipal Employees (AFSCME), Minnesota Council 5, Unit 208, and the State of Minnesota. (*Id.* ¶¶ 8–9.)

Under the terms of the CBA, corrections officers are eligible to take various types of leaves, whether for religious or secular reasons, in addition to their regular days off. (*See* AFSCME Unit 208 Agreement, attached as Exhibit A to Declaration of A. Hsu.)[1] Corrections officers accrue paid vacation leave at specified rates, which range from four to

---

[1] Documents necessarily embraced by the pleadings are not considered matters outside the pleading for purposes of their consideration under a Rule 12 motion to dismiss. *Enervations, Inc. v. Minn. Mining & Mfg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2003). In this case, Plaintiff quotes the CBA directly in his Complaint and even attached a partial excerpt as an exhibit to the complaint. Accordingly, the CBA (and excerpts therefrom) may be properly considered at the Rule 12 stage as a document necessarily embraced by the pleading. *See Jenisio v. Ozark Airlines, Inc. Retirement Plan for Agent and Clerical Employees*, 187 F.3d 970, 972 n.3 (8th 1999) (holding district court may consider the language of employee benefits plans and collective bargaining agreements when the plaintiff's claims are based on the documents and the content of the documents is not in dispute).

nine hours per biweekly pay period depending on their length of service. (Hsu Decl., Ex. A, Art. 8, Sec. 2.) That translates into 13 to 29 days of paid vacation leave each year, and 275 hours of accrued vacation may be carried over from year to year. (*See id.*, Art. 8, Sec. 2(G).) Corrections officers can also request paid holiday leave on 11 designated dates, including Christmas Day; receive one floating holiday per year that can be used at any time; and can earn additional compensatory time off by working overtime. (*Id.*, Art. 7, Sec. 7.) They can also request an unpaid leave of absence for personal reasons, which may include religious observances. (*Id.*, Art. 10, Sec. 4.)

Correctional facilities post available vacation slots 26 weeks in advance, and officers may submit leave requests for those slots during an initial 7-day posting period and subsequent posting periods if any of those vacation slots remain available after the initial posting. (*Id.*, Art. 8, Sec. 3.) Facilities "may limit the number of employees that may be absent on any given day subject to [their] operational needs" and, thus, leave requests may be denied based on staffing and scheduling requirements. (*Id.*, Art. 7, Sec. 2, & Art. 8, Sec. 3.)

Requests to use a floating holiday or compensatory time must be submitted at least 14 days in advance. (*Id.*, Art. 6, Sec. 4(E), & Art. 7, Sec. 2(A).) Requests for vacation or holiday leave (religious or secular) ordinarily must be submitted at least 21 days in advance. (*Id.*, Art. 7, Secs. 6–7.) Time to observe religious holidays must be taken without pay except where the employee has sufficient accumulated vacation leave or accumulated compensatory time, has used a floating holiday, or, by mutual consent, is able to make up the time. (*Id.*, Art. 7, Sec. 7.) Any conflicts over available leave slots are resolved based

on seniority. (*Id.*, Art. 6, Sec. 4(E); Art. 7, Secs. 2(A) & 6(A); Art. 8, Sec. 3(D).)  Besides these opportunities to take paid or unpaid leave, whether for religious or secular reasons, corrections officers may also voluntarily exchange up to 10 shifts per month and 33 shifts per year with the approval of a supervisor, provided that any shift exchange does not result in payment of overtime. (*Id.*, Art. 5, Sec. 1(D).)

On February 16, 2021, Plaintiff submitted a Request for Leave to his supervisor to observe Ash Wednesday.  (Compl. ¶ 22.)  In 2021, Ash Wednesday occurred on February 17.  (United States Conference of Catholic Bishops ("USCCB"), Liturgical Calendar for the Dioceses of the United States of America, at 6, available at https://www.usccb.org/resources/2021cal.pdf.)[2]  Plaintiff's Request for Leave was denied. (Compl. ¶ 22.)

On March 12, 2021, Plaintiff submitted a Request for Leave to his supervisor to observe Easter.  (Compl. ¶ 23.)  In 2021, Easter occurred on April 4.  (United States Conference of Catholic Bishops ("USCCB"), Liturgical Calendar for the Dioceses of the United States of America, at 6, available at https://www.usccb.org/resources/2021cal.pdf.)

---

[2] On Rule 12 motion, courts may "consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; without converting the motion into one for summary judgment." *Williams v. Employers Mutual Casualty Co.*, 845 F.3d 891, 903–04 (8th Cir. 2017) (quotations omitted). A court may take judicial notice of a "fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.* at 904 (quoting Fed. R. Evid. 201(b).)  The calendar dates of specific holidays are a proper subject of judicial notice. *Jerez v. Holder*, Civ. No. 10-CV-4498 (JRT/LIB), 2011 WL 7637808, at *9 (D. Minn. Sept. 1, 2011) ("The Court takes judicial notice of the fact that the New Year's Day Holiday was the next day, January 1.")

4

Plaintiff alleges there were seven staff available in the reserve pool for that date. (Compl. ¶ 23.) Plaintiff's Request for Leave was denied. (*Id.*)

On March 17, 2021, Plaintiff submitted a Request for Leave to his supervisor to observe Good Friday. (Compl. ¶ 24.) In 2021, Good Friday occurred on April 2. (United States Conference of Catholic Bishops ("USCCB"), Liturgical Calendar for the Dioceses of the United States of America, at 21, available at https://www.usccb.org/resources/2021cal.pdf.) Plaintiff alleges there were seven staff available in the reserve pool for that date. (Compl. ¶ 24.) Plaintiff's Request for Leave was denied. (*Id.*)

On July 9, 2021, Plaintiff submitted a Request for Leave to his supervisor to observe Christmas Eve. (Compl. ¶ 25.) Christmas Eve occurred on December 24, 2021. Plaintiff alleges there were eight additional staff available on that date. (*Id.*) Plaintiff's Request for Leave was denied. (*Id.*)

On October 8, 2021, Plaintiff submitted a Request for Leave to his supervisor to observe All Souls' Day. (Compl. ¶ 26.) All Souls' Day is observed on November 2. (*Id.*. ¶ 21.) Plaintiff alleges there were five additional staff available on that date. (*Id.* ¶ 26.) Plaintiff's Request for Leave was denied. (*Id.*)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) "serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Onyiah v. St. Cloud State Univ.*, 655 F.

Supp. 2d 948, 959-60 (D. Minn. 2009) (citation omitted). Under Rule 12(b)(6), a complaint must be dismissed if it fails to state a claim upon which relief can be granted.

On a motion to dismiss, the court considers all well-pleaded facts alleged in the complaint as true and construes the pleading in a light most favorable to the non-moving party. *E.g.*, *Brotherhood of Maint. of Way Emps. v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8th Cir. 2001). To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547, 556 (2007) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."). That is, a complaint must provide more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Instead, a complaint "must include sufficient factual allegations to provide the grounds on which the claim rests. A district court, therefore, is not required to divine the litigant's intent and create claims that are not clearly raised, and it need not conjure up unpled allegations to save a complaint." *Gregory v. Dillard's Inc.*, 565 F.3d 464, 473 (8th Cir. 2009).

## ARGUMENT

Plaintiff has failed to plead a viable claim for religious discrimination under Title VII. First, Plaintiff has failed to plead any adverse employment action arising from any conflict between his religious beliefs and workplace policy. Second, Plaintiff has failed to

plead sufficient facts to establish that Defendant failed to provide a reasonable accommodation.

Title VII of the Civil Rights Act of 1964 prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). Courts recognize two theories for asserting a religious discrimination claim: disparate treatment; and failure to accommodate. *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1017 (4th Cir. 1996) (citing *Mann v. Frank*, 7 F.3d 1365, 1368-70 (8th Cir. 1993)). Here, the plain language of the Complaint indicates that Plaintiff attempts to state a claim for failure to accommodate. (Compl. ¶¶ 27–31.)

To establish a prima face case of religious discrimination based on a failure to accommodate, an employee must show that (1) he holds a sincere religious belief that conflicts with a job requirement, (2) he informed his employer of the conflict, and (3) he was disciplined for failing to comply with the conflicting requirement. *Jones v. TEK Industries, Inc.*, 319 F.3d 355, 359 (8th Cir. 2003); *Maroko v. Werner Enterprises, Inc.*, 7789 F. Supp. 2d 993, 998 (D. Minn. 2011). Simply alleging a denial of a religious accommodation is not enough; an employee must also show that he suffered an adverse employment action as a result of not complying with the conflicting work requirement. *See Jones*, 319 F.3d at 359–60 (refusing to consider whether an employer reasonably accommodated religious beliefs where the plaintiffs failed to establish a prima facie case by showing that they suffered an adverse employment action); *see also Baker v. Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006) (plaintiffs who allege discrimination for failure to

7

accommodate must show they suffered an adverse employment action for failure to comply with the employment requirement that conflicted with their religious belief); *Reed v. Int'l Union*, 569 F.3d 576, 580 (6th Cir. 2009) ("We have declined to relieve a religious accommodation plaintiff of his burden to establish a prima facie case, including the requirement that he demonstrate that he has been discharged or disciplined.") *Alie v. Alamo Rent-A-Car, Inc.*, 8 F. App'x 156, 158–59 (4th Cir. 2001) ("[T]he accommodation provision does not affect the basic statutory requirement for adverse employment action.").

If the employee establishes a prima facie case, including that he suffered an adverse employment action, then the burden shifts to the employer to show either (1) that it provided a reasonable accommodation for the employee's religious needs, *or* (2) that accommodating the employee would cause an undue hardship by resulting in "more than a *de minimis* cost" to the employer. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 67–68 (1986); *see also Jones*, 319 F.3d at 360; *Maroko*, 778 F. Supp. 2d at 998. To meet its obligation, an employer need only offer "a reasonable accommodation to the employee," not the employee's preferred or requested accommodation. *Philbrook*, 479 U.S. at 70 & n.6; *see also Sturgill v. United Parcel Serv., Inc.*, 512 F.3d 1024, 1030 (8th Cir. 2008). A "sufficient religious accommodation need not be the 'most' reasonable one (in the employee's view), it need not be the one the employee suggests or prefers, and it need not be the one that least burdens the employee." *Shelton v. Univ. of Med. & Dentistry of N.J.*, 223 F.3d 220, 225 (3d Cir. 2000). In other words, Title VII does not require "an employer, absent undue hardship, to totally accommodate an employee's religious observances" and thereby eliminate any conflict between workplace rules and religious practice. *E.E.O.C. v.*

8

*Firestone Fibers & Textiles Co.*, 515 F.3d 307, 313–14 (4th Cir. 2008). So long as an employer has offered "*any* reasonable accommodation," the "statutory inquiry is at end" and the employer "need not further show that each of the employee's alternative accommodations would result in undue hardship." *Philbrook*, 479 U.S. at 68 (emphasis added); *see also Haliye v. Celestica Corp.*, 717 F. Supp. 2d 873, 881 (D. Minn. 2010 ("[A]n employer who has offered a reasonable accommodation need not prove that the employee's preferred accommodation would cause an undue hardship.").

**I.     Plaintiff fails to allege an adverse employment action.**

First and foremost, Plaintiff has failed to allege sufficient facts to establish a prima facie case of religious discrimination because he has not pled any adverse employment action for failing to work on a religious holiday. As noted, simply alleging a denial of a religious accommodation is not enough; an employee must also show that he suffered an adverse employment action as a result of not complying with the conflicting work environment. *See Jones*, 319 F.3d at 359–60; *Baker*, 445 F.3d at 546; *Reed*, 569 F.3d at 580. An adverse employment action is a "tangible change in working conditions that produces a material employment disadvantage," such as "[t]ermination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects." *Spears v. Mo. Dep't of Corrs. & Human Res.*, 210 F. 3d 850, 853 (8th Cir. 2000). In *Leifer v. New York State Division of Parole*, for example, a Jewish correctional officer brought a claim under Title VII for failure to accommodate his religious by scheduling mandatory meetings on two Jewish holidays. 391 F. App'x 32, 33 (2d Cir. Aug. 23, 2010). The Second Circuit held that the claim failed as a matter of law because

9

the plaintiff did not show that he suffered an adverse employment action as a result of missing the mandatory meetings. *Id.* at 33–34.

The same is true here. Plaintiff's discrimination claim fails at the outset because he has not alleged any adverse employment action during the relevant time period for failing or refusing to work on a religious holiday. Indeed, Plaintiff does not allege *any* disciplinary action against him based on his refusal to comply with a conflicting work requirement that he work on certain religious holidays. Moreover, the mere threat of possible discipline for refusing to work on a religious holiday does not itself constitute an adverse employment action. *See Edwards v. Elmhurst Hosp. Ctr.*, 2013 WL 839535, at *4 (E.D.N.Y. Feb. 15, 2013) (threats of discipline "do not, by themselves, constitute an adverse employment action"). Particularly as in this case, Plaintiff does not even allege the threat of potential discipline, leaving it only to vague speculation and possibility. But possibility alone is insufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 679 (holding dismissal is appropriate where "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct").

For these reasons, Plaintiff fails to allege a viable claim for religious discrimination. On this basis alone, the Court should dismiss Plaintiff's claim with prejudice.

## II.   Plaintiff's claim fails because the CBA and policies identified in the Complaint are reasonable accommodations of his religious needs.

Even if Plaintiff has plead sufficient facts to establish a prima facie case of discrimination, his claim would still fail on the face of the Complaint because, as alleged, the DOC has reasonably accommodated his religious needs. Courts have recognized that

pre-existing leave policies and seniority-based systems for assigning working shifts can, by themselves, constitute a "significant accommodation to the needs, both religious and secular," of all employees. *See Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 78 (1977); *Firestone*, 515 F.3d at 315–16. In *Hardison*, for example, an airline employee was terminated after refusing to work on Saturdays due to his religious beliefs. 432 U.S. at 67–68. The employee was subject to a "seniority system contained in a collective-bargaining agreement," which was used to assign employees for particular shift assignments. *Id.* at 67. The Supreme Court held that the seniority system "itself represented a significant accommodation to the needs, both religious and secular, of all of TWA's employees," and that "TWA was not required by Title VII to carve out a special exception to its seniority system in order to help Hardison to meet his religious obligations." *Id.* at 78, 84. The Court emphasized that an employer's obligation to provide a "reasonable accommodation" does not mean that it "must deny the shift and job preferences of some employees, as well as deprive them of their contractual rights, in order to accommodate or prefer the religious needs of others." *Id.* at 81. The Court also found that granting the employee's preferred accommodation would involve an undue hardship by requiring "TWA to bear more than a de minimis cost" — namely, by requiring it to either operate "short-handed" on the employee's Sabbath or compel another employee to work in his place. *Id.* at 84.

Similarly, in *E.E.O.C. v. Firestone Fibers & Textiles Co.*, an employee was terminated after refusing to work on the Sabbath and religious holidays. 515 F.3d at 309–11. The employee was subject to a CBA and company policies that provided all employees with vacation days, floating holidays, unpaid leave time, and the opportunity to swap shifts

11

eight times per year. *Id.* at 310. The employee was able to use vacation days, floating holidays, and unpaid leave to avoid working during some religious holidays, but did not make use of available shift swapping and did not have enough leave to cover all the holidays he wished to take. *Id.* at 311. The Fourth Circuit held that Firestone had satisfied its obligations under Title VII through its "pre-existing attendance policies," which provided all employees "with numerous ways of taking time off when necessary" and represented "a significant accommodation to the needs, both religious and secular, of all of its employees." *Id.* at 315–16. The court rejected the plaintiff's arguments that his employer was required to provide him with more leave than its policy permitted, explaining that "employers must be given leeway to plan their business operations and possible accommodative options in advance" and are not required to offer an accommodation when they reasonably believe it would entail a violation of a CBA by denying "the shift and job preference of some employees" or would "impose personally and directly on fellow employees." *Id.* at 317. Because the employer reasonably accommodated the employee's religious observances through its attendance policies, the court declined to "consider whether alternative accommodations would have been appropriate." *Id.* at 316.

This case is similar to *Hardison* and *Firestone.* Through its CBA and leave policies, the DOC provides all corrections officers with numerous opportunities to take time off for both religious and non-religious reasons, including through accrued vacation leave, holiday leave, floating holidays, shift swaps, and unpaid leave time. As in *Hardison* and *Firestone*, these policies represent "a significant accommodation to the needs, both religious and

secular, of all of [its] employees." *Hardison*, 342 U.S. at 78. Based on these policies, Plaintiff had the opportunity and accommodation to take off some religious holidays, and could have also sought shift exchanges for other religious holidays, which he does not allege to have done. That he has not been allowed to take off all his preferred religious holidays—either because his leave request was untimely or facility staffing and scheduling requirements precluded the request—does not mean that he was not provided a reasonable accommodation.

As courts have made clear, Title VII does not require an employer, absent undue hardship, to totally accommodate an employee's religious observances, and preexisting leave policies can themselves represent a reasonable accommodation.

As alleged, two of the five requests identified by Plaintiff were untimely under the governing CBA. Plaintiff's February 16, 2021, request for leave on Ash Wednesday was only submitted one day before the requested leave date, in patent violation of the CBA requirements. Likewise, Plaintiff's March 17, 2021, request for leave on Easter Sunday was submitted less than 21 days in advance of the leave date as required for holiday leave requests under the CBA. Although Plaintiff contends that his request was over 14 days prior in accordance with the requirements for a floating holiday request, the request he attaches as an exhibit is notably coded under the requested Leave Code for B3 (Alternate Holiday) rather than B2 (Floating Holiday). (*See* Compl., Ex. E [ECF 1-5].) As noted previously, however, non-floating holiday leave must be submitted at least 21 days in advance. (*See* Hsu Decl., Ex. A, Art. 7, Secs. 6–7.)

As to the remaining three requests for leave, Plaintiff's conclusory allegations that no undue hardship would have been experienced by DOC due to accommodation of the requests are legal conclusions that Court need not accept as true. *See Silver v. H&R Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997) ("In considering a motion to dismiss, courts accept the plaintiff's factual allegations as true, but reject conclusory allegations of law and unwarranted inferences.") Nor does Plaintiff allege any facts other than his own conclusory statements to suggest that facility staffing requirements on the requested leave dates were otherwise sufficient to support his requested leave. Indeed, Plaintiff notably alleges no facts to suggest by what standard sufficient staffing levels are to be determined regarding the availability of leave slots on any given date he requested leave, proffering instead only his conclusory assertions that that there was "adequate staffing".

Furthermore, because the DOC has provided Plaintiff a reasonable accommodation through the CBA and existing leave policies, which have allowed him to observe religious holidays when staffing and scheduling requirements can be met, it need not show that any of his preferred accommodations would result in undue hardship. *See Philbrook*, 479 U.S. at 68. Nevertheless, allowing Walters to take religious holidays off when the DOC's staffing and scheduling requirements cannot be met would impose more than a de minimis impact on the DOC and Plaintiff's coworkers. Granting Plaintiff leave in such situations would either require the DOC to operate short-staffed during a shift or deny other employees their rights under the CBA to requested leave in order to cover for Walters' absence. Title VII does not, however, require an employer to deny the leave preferences of "some employees, as well as deprive them of their contractual rights, in order to

accommodate or prefer the religious needs of others," or to impose more than a de minimis impact on coworkers. *Hardison*, 432 U.S. at 81, 84.

## CONCLUSION

For the reasons stated herein, Plaintiff has failed to plead a viable claim for religious discrimination and DOC therefore respectfully requests the Court grant its motion and dismiss all claims against it with prejudice.

Dated:  July 1, 2022　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　KEITH ELLISON
　　　　　　　　　　　　　　　　　　　　Attorney General
　　　　　　　　　　　　　　　　　　　　State of Minnesota


　　　　　　　　　　　　　　　　　　　　s/ Alexander W. Hsu
　　　　　　　　　　　　　　　　　　　　ALEXANDER W. HSU
　　　　　　　　　　　　　　　　　　　　Assistant Attorney General
　　　　　　　　　　　　　　　　　　　　Atty. Reg. No. 0399275

　　　　　　　　　　　　　　　　　　　　445 Minnesota Street, Suite 1400
　　　　　　　　　　　　　　　　　　　　St. Paul, Minnesota 55101-2131
　　　　　　　　　　　　　　　　　　　　(651) 757-1218 (Voice)
　　　　　　　　　　　　　　　　　　　　(651) 282-5832 (Fax)
　　　　　　　　　　　　　　　　　　　　alexander.hsu@ag.state.mn.us

　　　　　　　　　　　　　　　　　　　　ATTORNEY FOR DEFENDANT

|#5262927-v1